THE VILLAGE OF GURNEE, Plaintiff-Appellant, v. LARRY J. GROSS, Defendant-Appellee.

Second District     Nos. 2—87—1157, 2—87—1158 cons.

Opinion filed August 30, 1988.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Dennis P. Daly, of Daly & Daly, of Waukegan, for appellant Village of Gurnee.

Michael J. Salvi, of Salvi & Salvi, of Lake Zurich, for appellee.

JUSTICE NASH delivered the opinion of the court:

In these consolidated cases, the Village of Gurnee (Village) appeals from an order quashing the arrest of defendant, Larry Gross, and suppressing evidence of defendant's intoxication which the trial court found was obtained by a police officer as a result of an impermissible stop of defendant's automobile. We reverse.

At the hearing on defendant's suppression motion, Officer Thomas Agos testified that at about 11:30 p.m. on August 28, 1987, while on patrol in his marked police car, he received a radio dispatch from the police department to investigate a reckless driving complaint in the 4200 block of Blackstone in the Village of Gurnee. The automobile which was purported to have been driven recklessly was described by the police dispatcher as a blue Camaro with license number BMG697. Agos proceeded to the area, which was three-quarters of a mile away, and as he was turning southbound on First Street, he saw the car described in the dispatch traveling northbound on First Street and approaching a stop sign at the intersection. The officer, who was in uni-

form, stopped his squad car within five feet of the Camaro, turned on his overhead red Mars lights, rolled down his window, and asked defendant, who was the driver of the Camaro, to pull his car over. Agos testified that defendant looked at him and then proceeded to drive northbound through the intersection. Agos, with his overhead lights still on, turned his squad car around and followed defendant for three blocks where defendant pulled his car over to the curb. When Agos walked up to defendant's car he noticed that defendant's eyes appeared bloodshot and glazed, and, when he requested defendant to get out of the car, he appeared unsteady. Agos advised defendant the police department had received a complaint of a reckless driver in the 4200 block of Blackstone and had been given a description of defendant's car and license number. The officer inquired whether defendant had any knowledge of such driving and was advised defendant did not. The officer noticed an odor of alcohol on defendant's breath and that his speech was slurred; he conducted two or three field sobriety tests, which defendant could not perform well, and then arrested defendant for operating a motor vehicle while under the influence of alcohol.

Defendant testified at the suppression hearing that he first noticed the police car's overhead lights in his rearview mirror while he was driving, and that he stopped four or five blocks later. Defendant further stated that he was not speeding or doing anything illegal at that time, and the officer did not issue any citations other than for driving under the influence of alcohol. The parties stipulated that there was no outstanding warrant for defendant's arrest.

No other evidence was presented at the suppression hearing relating to the source of or factual basis for the complaint of reckless driving received by the police department and transmitted to Officer Agos. Nor was any inquiry made to defendant whether or not he had seen or heard the officer request him to pull over at the stop sign. The trial court granted defendant's motion to quash his arrest and suppress evidence of intoxication, finding that Officer Agos lacked grounds or cause to stop defendant, even to effect a *"Terry"* stop, as no evidence had been offered relating to the basis for the reckless driving complaint or the identity and reliability of the complainant.

The Village contends that the fact of the reckless driving complaint, coupled with Officer Agos' observance of the described car and defendant's failure to stop when requested to do so, raised a reasonable inference that defendant had committed the offenses of reckless driving (Ill. Rev. Stat. 1985, ch. 95½, par. 11—503), fleeing or eluding a police officer (Ill. Rev. Stat. 1985, ch. 95½, par. 11—204), or ob-

structing the performance of a peace officer (Ill. Rev. Stat. 1985, ch. 38, par. 31—1). It also argues that defendant's flight from the officer provided sufficient articulable facts in itself to justify an investigatory stop.

Defendant contends that because the State failed to produce evidence that he had done anything illegal or was acting suspiciously prior to being stopped, and no evidence was produced that the reckless driving complaint had any indicia of reliability, the investigatory stop was improper and the evidence of intoxication acquired after defendant was illegally stopped was required to be suppressed.

■ On a motion to suppress evidence, the defendant has the burden to make a *prima facie* showing that the evidence was obtained by an illegal search and seizure (*People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898; *People v. Berg* (1977), 67 Ill. 2d 65, 68, 364 N.E.2d 880), and once made, the burden of going forward with evidence demonstrating legal justification for the seizure shifts to the State. (*People v. Burton* (1985), 131 Ill. App. 3d 153, 156, 475 N.E.2d 583.) A reviewing court will not reverse the trial court's finding on a motion to suppress evidence unless the finding is manifestly erroneous. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766.

■ Illinois' codification of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, provides that a peace officer may stop a person in a public place for a reasonable period of time when the circumstances reasonably imply that the person is, has, or is about to commit a violation of an Illinois penal statute. (Ill. Rev. Stat. 1985, ch. 38, pars. 107—14, 102—15.) To be reasonable a stop must be based on specific and articulable facts; an unparticularized suspicion or hunch is insufficient. (*Terry v. Ohio* (1968), 392 U.S. 1, 21-27, 20 L. Ed. 2d 889, 906-09, 88 S. Ct. 1868, 1880-83; *People v. McGowan* (1977), 69 Ill. 2d 73, 77-78, 370 N.E.2d 537, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624; *People v. Vena* (1984), 122 Ill. App. 3d 154, 160-61, 460 N.E.2d 886.) While a police officer may rely on information received through police communication channels, including radio messages, to justify an investigatory stop, the collective knowledge of the law enforcement agency requesting or directing such action must be viewed to determine whether sufficient facts existed warranting a stop. *People v. Brown* (1980), 88 Ill. App. 3d 514, 519, 410 N.E.2d 505, *cert. denied* (1981), 451 U.S. 1019, 69 L. Ed. 2d 392, 101 S. Ct. 3010.

■ We agree with the trial court's conclusion that the reckless driving complaint, standing alone, did not provide articulable facts sufficient to justify an investigatory stop. While reasonable cause to

stop an individual may be based on an informant's tip, it is clear that some indicia of reliability must be provided to justify a *Terry* stop. (See *Adams v. Williams* (1972), 407 U.S. 143, 146-47, 32 L. Ed. 2d 612, 617-18, 92 S. Ct. 1921, 1923-24; see also *United States v. Hensley* (1985), 469 U.S. 221, 233-34, 83 L. Ed. 2d 604, 615, 105 S. Ct. 675, 683.) Here, there was no evidence offered of the reliability of the complainant or the basis for the reckless driving complaint, and the fact that Officer Agos observed a blue Camaro, license BMG697, in the area described by the complainant does not sufficiently corroborate the complaint. See, *e.g., People v. Moraca* (1984), 124 Ill. App. 3d 561, 564-67, 464 N.E.2d 312 (no articulable facts justifying *Terry* stop shown where there was no evidence of the informant's reliability and tip did not provide any specific detail which could be verified at the scene relative to the informant's conclusion that the defendant was in possession of a machine gun and cannabis; only events which corroborated tip were that police observed a blue van in the vicinity of Hickory Street with the license plate number YZC625).

██ We conclude, however, that the reckless driving complaint to the police department, Officer Agos' observation of defendant's car, which matched the description, license number and general location of the car in corroboration of the complaint, coupled with defendant's lack of response to the officer's request to pull his car over, were sufficient to permit an investigatory stop. (Compare *People v. Jackson* (1986), 145 Ill. App. 3d 789, 793-94, 495 N.E.2d 1359 (police officer's sighting of a van similar to the description received from a radio dispatch of stolen van and its occupants, which sighting coincided with information received over radio about the van's time, distance and direction, coupled with the fact that a passenger in the van slouched in his seat when the officer looked at him from his squad car, warranted an investigatory stop).) In *People v. Holdman* (1978), 73 Ill. 2d 213, 383 N.E.2d 155, *cert. denied* (1979), 440 U.S. 938, 59 L. Ed. 2d 496, 99 S. Ct. 1285, police officers shined a light into a car believed to have a connection with a defendant for whom they had a warrant. The car accelerated away in an attempt to flee, but crashed, and its occupants, including defendants, then ran from the scene on foot. The court noted there was persuasive authority for the proposition "that flight from a clearly identifiable police officer may, dependent upon the circumstances, be sufficient to provide probable cause for an arrest" (73 Ill. 2d at 221) and stated that defendant's on-foot flight from the officers provided articulable facts necessary to justify an investigatory stop under the *Terry* doctrine. 73 Ill. 2d at 221. See also *People v. Jackson* (1981), 96 Ill. App. 3d 1057, 1060, 422 N.E.2d 195

(defendant's flight required police pursuit and provided articulable facts necessary to justify an investigatory stop).

In the present case the officer testified that he stopped five feet from defendant's car, turned on his Mars lights and rolled down his window, and asked defendant to pull his car over. Defendant looked at Agos, who was in uniform, and, instead of curbing his car, proceeded through the intersection, stopping several blocks later after the officer turned his squad car around and followed him. Defendant testified that he saw Agos' overhead lights in his rearview mirror prior to being stopped, but never stated whether or not he had seen the squad car at the stop sign or heard Agos' request to pull over. In testing the reasonableness of the officer's conduct based upon those facts known to him at the time, we think he was required to follow defendant and make an investigatory stop in an effort to determine whether there was criminal behavior by defendant, even though there was not then probable cause for an arrest. As the evidence of intoxication was properly discovered during the brief initial detention of defendant, it should not have been suppressed.

Accordingly, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Judgment reversed; cause remanded.

DUNN and INGLIS, JJ., concur.