No. 2--00--1326  

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE CITY OF NAPERVILLE, ) Appeal from the Circuit

) Court of Du Page County.

Plaintiff-Appellant, )

)

) No. 00--DT--539

)

GARY C. SCHIAVO, ) Honorable

) Ronald B. Mehling,

Defendant-Appellee. ) Judge, Presiding.

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Gary C. Schiavo, filed a motion to quash his arrest for driving under the influence of alcohol and suppress the evidence flowing therefrom.  The circuit court of Du Page County granted this motion.  Following the denial of its motion to reconsider, the City of Naperville (City) filed a certificate of impairment (188 Ill. 2d R. 604(a)(1)), and this appeal ensued.  For the reasons that follow, we reverse and remand this cause for further proceedings.

The pertinent facts in this case are undisputed.  At approximately 12:30 a.m on February 5, 2000, defendant was stopped by Steve Baker, a police officer employed by the City, and cited for driving under the influence of alcohol.  Defendant also received a citation for having an inoperative rear registration light.  The trial court found Baker's testimony regarding the inoperative registration light not credible, and the City does not contest this finding on appeal.

Baker testified that, prior to stopping defendant, he was sitting in a parking lot monitoring traffic near the corner of Aurora Avenue and Ogden Avenue.  A small white vehicle pulled up to his car rather quickly.  The driver, a man, told Baker that a red Ford Taurus was heading westbound on Aurora Avenue and was "weaving all over the road."  The man also provided Baker with a partial license plate of "DEAL."  From where he was sitting, Baker could see one vehicle traveling westbound, and he proceeded to go after it.  When he caught up to the vehicle, it was stopped at a red traffic signal.  Baker confirmed that it was, in fact, a red Ford Taurus and it bore the license plate "DEAL 911."  When the light turned green, the vehicle proceeded forward.  Baker immediately effected a traffic stop.  Defendant was subsequently arrested and cited.

The trial court granted defendant's motion to quash arrest and suppress evidence.  After having rejected Baker's testimony regarding the equipment violation, the court determined that Baker lacked a reasonable suspicion that defendant was violating the law such that an investigatory stop was warranted.  The trial court found that the information provided by the driver of the white vehicle was, without corroboration, an insufficient basis to stop defendant.

We generally will not interfere with a trial court's decision on a motion to suppress evidence unless the decision is clearly erroneous or contrary to the manifest weight of the evidence.  
People v. Ertl
, 292 Ill. App. 3d 863, 867-68 (1997).  However, 
de novo
 review is appropriate where, as here, neither the facts nor the credibility of the witnesses is at issue.  
People v. James
, 163 Ill. 2d 302, 310 (1994).  Defendant asserts that, because the trial court rejected Baker's testimony regarding the alleged equipment violation, 
de novo
 review is inappropriate.  However, this testimony bears no relation to whether a stop was permissible based upon what the driver of the white car told Baker, and defendant points to no other disputed facts or credibility issues.  Accordingly, we will review this issue 
de novo
.

Absent a warrant, a search or seizure is unreasonable unless it falls within a specific and well-delineated exception to the warrant requirement.  
Ertl
, 292 Ill. App. 3d at 868.  The United States Supreme Court set forth one such exception in 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).  In appropriate circumstances, a police officer may briefly detain an individual for investigatory purposes and, if necessary, conduct a limited protective search for weapons.  
People v. Flowers
, 179 Ill. 2d 257, 262 (1997).  Such an investigatory stop is permissible where a police officer reasonably believes that the individual has committed or is about to commit a crime.  
Flowers
, 179 Ill. 2d at 262.  The officer's suspicion must be based on specific and articulable facts; a hunch or an unparticularized suspicion is not sufficient.  
Village of Gurnee v. Gross
, 174 Ill. App. 3d 66, 69 (1988).  A lesser showing is required to meet the reasonable-suspicion standard than is necessary to establish probable cause.  
Ertl
, 292 Ill. App. 3d at 867.  Whether this standard has been met is analyzed considering the totality of the circumstances confronting the officer at the time of the stop.  
People v. Yarber
, 279 Ill. App. 3d 519, 524-26 (1996).  A brief stop of a vehicle, like the brief detention of an individual, may be conducted if a reasonable suspicion exists.  
People v. Moraca
, 124 Ill. App. 3d 561, 563-64 (1984).

The facts relied on by an officer in determining if a reasonable suspicion to conduct a stop exists need not have been personally observed by the officer.  
People v. Earley
, 212 Ill. App. 3d 457, 465 (1991).  An officer may rely on facts related to him or her by third parties.  
People v. Tisler
, 103 Ill. 2d 226, 237 (1984). (
Tisler
 and some of the other cases cited herein  involve probable cause determinations rather than reasonable suspicion in the 
Terry
 context; such cases nevertheless provide guidance for the present inquiry, keeping in mind the lower standard involved here (see 
Ertl
, 292 Ill. App. 3d at 869).)  However, before the officer is entitled to rely on information provided by a third person, the information must bear some indicia of reliability.  
Village of Gurnee
, 174 Ill. App. 3d at 69-70.  In determining whether any indicia of reliability exist, a court should consider the reliability of the source of the information as well as whether the information is corroborated sufficiently to show the overall reliability of the tip.  
Earley
, 212 Ill. App. 3d at 465.  As we are considering the totality of the circumstances, a deficiency in one area may be overcome by the strength of another.  
Ertl
, 292 Ill. App. 3d at 873.

Regarding the reliability of the source, courts have historically drawn a distinction between police informants and private citizens.  
People v. Jones
, 196 Ill. App. 3d 937, 955 (1990).  Prior to 1989, the law of this state presumed that information provided by private citizens was reliable and therefore  not subject to the same scrutiny as information provided by an informer who was being compensated for his or her assistance.  
People v. Hood
, 262 Ill. App. 3d 171, 175 (1994).  In 
People v. Adams
, 131 Ill. 2d 387, 398 (1989), our supreme court stated "the rigidity embodied in the presumptions concerning [these] classifications is no longer applicable."  However, the supreme court did hold that this distinction is still relevant in assessing the reliability of the source of the information.  
Adams
, 131 Ill. 2d at 398.  Moreover, information that comes from a victim or from an eyewitness is entitled to particularly great weight.  
People v. Aguilar
, 286 Ill. App. 3d 493, 496-97 (1997).

Alternatively, information provided by a third party may be deemed sufficiently reliable to permit an investigatory stop if it is adequately corroborated.  
Earley
, 212 Ill. App. 3d at 465.  The corroboration of predictions about future behavior or details that are not commonly known demonstrates a special familiarity with the suspect's affairs, which, in turn, indicates that the third party likely also possesses special knowledge about the suspect's criminal activities.  See 
Alabama v. White
, 496 U.S. 325, 332, 110 L. Ed. 2d 301, 310, 110 S. Ct. 2412, 2417 (1990).  Conversely, the corroboration of generally known facts, like a description of the suspect, does little to demonstrate that the third party possesses any special knowledge about the suspect.  See 
Yarber
, 279 Ill. App. 3d at 528-29; 
City of Lake Forest v. Dugan
, 206 Ill. App. 3d 552, 555-56 (1990).  

Because we are concerned with the totality of the circumstances under which the stop was made, additional factors may inform our inquiry.  For example, information containing concrete facts is entitled to more weight than information that consists of conclusory allegations.  Compare 
City of Lake Forest
, 206 Ill. App. 3d at 555, with 
Jones
, 196 Ill. App. 3d at 956.  Further, individuals who come forward and give information that is immediately verifiable, thus exposing themselves to the risk of sanctions for making a false complaint, cloak themselves with an air of reliability.  
Adams v. Williams
, 407 U.S. 143, 146-47, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923-24 (1972).

In the present case, Baker observed defendant sitting at a traffic signal and immediately stopped him as he was pulling away.  Thus, Baker did not observe defendant while he was driving.  During this period, Baker was able to confirm only details of the information he received from the driver of the white car insofar as they related to a description of defendant, namely, the color, make, model, and license plate number of defendant's car.  These details were merely descriptive in nature and would have been known by anyone who had seen defendant driving down the road.  As noted above, the corroboration of such facts is entitled to little weight in assessing whether the information Baker received was reliable.  See 
City of Lake Forest
, 206 Ill. App. 3d at 555-56 (holding that the mere fact that a police officer observed a car with the same license plate and of the same make and model as one identified by an informant as being driven by an intoxicated person was insufficient corroboration to justify a stop).  Accordingly, if the stop of defendant was justified, it had to be because the information Baker received came from a credible source.

The man who provided Baker with the information upon which Baker decided to stop defendant approached Baker directly.  The man was in a vehicle.  At the time this information was conveyed, Baker could see defendant's car.  Aside from providing Baker with descriptive details, the man stated that defendant's car was "weaving all over the road."  The man's identity was, and remains, unknown.  These facts present us with a situation lying somewhere between that of an anonymous informant, whose reliability is necessarily unknown (see 
People v. Wiley
, 174 Ill. App. 3d 444, 450 (1988)), and that of a known citizen who voluntarily comes forward to aid the police, which courts have traditionally considered reliable (see 
Hood
, 262 Ill. App. 3d at 175).  We believe the case before us is more similar to the latter scenario.

This court confronted an analogous situation in 
In re J.J.
, 183 Ill. App. 3d 381 (1989).  In that case, a security guard at a McDonald's restaurant called the police and reported that there was a man with a gun in the restaurant.  The guard had not seen the gun himself; rather, he had been told about it by a customer.  The respondent argued that the police lacked reasonable suspicion to detain him, in that the detention was based solely upon information provided by an anonymous person.  
J.J.
, 183 Ill. App. 3d at 384.  We rejected this argument despite the fact that the informant's identity was unknown, noting that the information was provided by a citizen who voluntarily came forward and conveyed it, in person, to the security guard.  
J.J.
, 183 Ill. App. 3d at 387.  Further, prior to the stop, the police were able to corroborate only descriptive details about the respondent.  
J.J.
, 183 Ill. App. 3d at 386-87.  Similarly, in the present case, the stop was based on information provided by someone who, though unknown, openly came forward to provide the information.  Also, like the officers in 
J.J.
, Baker corroborated only descriptive details before initiating the stop.  The present case actually presents a more compelling case for upholding the stop, in that the unidentified person directly approached a police officer rather than a security guard.  See also 
People v. Delk
, 96 Ill. App. 3d 891, 896 (1981) (holding that an unidentified woman who provided a tip directly to the police was entitled to greater credibility in the absence of any indication that she was a professional informant rather than an ordinary citizen).

Numerous other jurisdictions confronting the issue of an unidentified civilian coming forward to provide information to law enforcement have held that an investigatory stop is permissible under such circumstances.  In 
United States v. Sierra-Hernandez
, 581 F.2d 760 (9th Cir. 1978), the Ninth Circuit upheld an investigatory stop where an unidentified citizen approached a border patrol agent and informed the agent that a vehicle was transporting marijuana.  The court first noted that "[i]nformation from a citizen who confronts an officer in person to advise that a designated individual present on the scene is committing a specific crime should be given serious attention and great weight by the officer."  
Sierra-Hernandez
, 581 F.2d at 763.  The court went on to observe that, by "presenting himself to the agent and doing so while driving a car from which his identity might easily be traced, the informant was in a position to be held accountable for his intervention," thus increasing the reliability of the information provided.  
Sierra-Hernandez
, 581 F.2d at 763.  Other courts have upheld investigatory stops in similar situations.  See 
State v. Ramey
 129 Ohio App. 3d 409, 416-18, 717 N.E.2d 1156, 1158-59 (1998); 
State v. Sailo
, 910 S.W.2d 184, 189 (Tex. Ct. App. 1995); 
Rittman v. Department of Public Safety
, 875 P.2d 439, 440-41 (Okla.  App. 1994); 
People v. Willard
 183 Cal. App. 3d Supp. 5, 6-7, 228 Cal. Rptr. 895, 895-96 (1986); 
State v. Davis
, 393 N.W.2d 179, 180-81 (Minn. 1986); see also 
State v. Slater
, 267 Kan. 694, 701, 986 P.2d 1038, 1043 (1999) ("Second on the scale of reliability are those tips in which, although the informant does not identify himself or herself, the informant gives enough information that his or her identity may be ascertained.  This occurs where the informant states that he or she is calling from his or her place of business, or where the informant in person makes contact with the police officer.  In such cases, courts generally find such a tip to be reliable").  We find the reasoning of these courts to be persuasive.

When the man in the white car approached Baker, he did not know if Baker would request his name.  Moreover, he was driving a vehicle from which Baker easily could have obtained the registration number.  Thus, it is apparent that the man was not concerned with preserving his anonymity.  The man provided a concrete fact--that defendant was swerving--rather than a subjective opinion as to defendant's state of intoxication.  Finally, at the time the information was conveyed, defendant was in sight of Baker, making the information immediately verifiable.  Under such circumstances, the man in the white car openly exposed himself to possible sanctions for making a false complaint, thus imbuing himself with an air of credibility.  See 
Adams
, 407 U.S. at 146-47, 32 L. Ed. 2d at 617, 92 S. Ct. at 1923-24.

Defendant relies on 
Moraca
, 124 Ill. App. 3d 561; however, we find that case distinguishable.  
Moraca
 involved an anonymous telephone call, the substance of which was relayed to the police by a crime prevention organization, rather than a citizen conveying information to the police in a face-to-face setting.  
Moraca
, 124 Ill. App. 3d at 562.  
Florida v. J.L.
, 529 U.S. 266, 268, 146 L. Ed. 2d 254, 258-59, 120 S. Ct. 1375, 1377 (2000), also relied on by defendant, is distinguishable for the same reason.  Defendant also briefly relies on 
Village of Gurnee
, 174 Ill. App. 3d 66.  However, in that case, no evidence was presented regarding the basis or reliability of the information conveyed to the police or the identity of the source of the information.  
Village of Gurnee
, 174 Ill. App. 3d at 68.  In fact, that opinion does not even reveal the manner in which the information was conveyed to the police.  In the case before us, we know the information was obtained from the driver of the white car.

In light of the foregoing, we conclude that the trial court erred in granting defendant's
 motion to quash arrest and suppress evidence.  Baker was entitled to rely on the information provided by the citizen who voluntarily came forward and reported potentially illegal behavior occurring simultaneously with and in the immediate vicinity of the report.  

The order of the circuit court quashing defendant's arrest and suppressing the evidence flowing therefrom is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

GEIGER
 and BYRNE, JJ., concur.