THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH L. BRODACK, Defendant-Appellant.

Second District   No. 2—97—0291

Opinion filed April 24, 1998.

COLWELL, J., dissenting.

Michael S. Grant, of Michael S. Grant, Ltd., of Fox Lake, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of

State's Attorneys Appellate Prosecutor's Office, of counsel), and Raymond D. Collins, of Round Lake Beach, and Michael S. Ewert, of Chicago, for the People.

JUSTICE THOMAS delivered the opinion of the court:

The defendant, Kenneth L. Brodack, was charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 1996)). The defendant's driving privileges were statutorily summarily suspended for two years effective September 8, 1996, after he failed to submit to chemical testing (625 ILCS 5/11—501.1 (West 1996)). The defendant filed a motion to suppress evidence and a petition to rescind the summary suspension of his license. The defendant was subsequently convicted of driving under the influence of alcohol. His motion to suppress evidence and his petition to rescind the statutory summary suspension of his driver's license were denied. The defendant appeals.

Village of Round Lake Beach police officer Dave Dowdle testified that on July 24, 1996, at 7:38 p.m., he was on routine patrol in a marked squad car when he received a radio dispatch that a citizen had reported on his cell phone that there was a brown Cadillac heading south on Route 83 from the Lake Villa area that was "all over the road." The dispatch also communicated a partial license plate for the vehicle. About 7:40 p.m. that same evening, Officer Dowdle observed a brown Cadillac driven by the defendant stopped in the eastbound lane at the intersection of Route 83 and Rollins Road. The vehicle's license plate number matched the partial license plate number given by the radio communication.

According to Officer Rollins, he eventually came up behind the defendant's vehicle. When the light turned green, the officer followed the defendant for 400 to 500 feet. At that point the officer activated his mars lights and siren, but the defendant did not pull to the right. After traveling about 600 feet farther, the defendant pulled into a left-turn lane. He then turned left into a Jewel parking lot. As he did so, an oncoming vehicle was forced to brake abruptly to avoid striking the defendant's vehicle. The officer denied that he had motioned to the defendant to turn left. Officer Dowdle then followed the defendant's vehicle for another 100 yards into the parking lot before the defendant eventually stopped.

Officer Dowdle further testified that once the defendant's vehicle was stopped he observed the defendant exit the car and almost fall over. The defendant bumped up against the car and used it for support. The officer smelled a strong odor of alcohol on the defendant's breath. Dowdle noted that the defendant failed all three field sobriety tests that were administered.

The defendant testified that he did not know the officer was attempting to pull him over until he was in the left-turn lane waiting to turn. He claimed that the officer motioned for him to turn. He also noted that vehicles in the area were stopping and that he made his left turn after an oncoming vehicle had stopped. The defendant admitted that he had been drinking beer at home prior to being stopped.

On appeal, the defendant first argues that the trial court erred in denying his motion to suppress evidence and his petition to rescind the statutory summary suspension of his driving privileges. He maintains that Officer Dowdle lacked probable cause to effect a traffic stop.

■ We initially note that the correct standard to be applied in ascertaining whether an investigative stop is justified is not probable cause to arrest or search but, rather, the less exacting standard of whether the officer has an articulable suspicion that the vehicle or an occupant is subject to seizure for violation of a law. *Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1401 (1979); *People v. Gerwick*, 235 Ill. App. 3d 691, 695 (1992); *People v. Faletti*, 215 Ill. App. 3d 61, 63 (1991). An officer's decision to make a valid investigatory stop must be based on specific and articulable facts which, when combined with rational inferences from those facts, reasonably warrant an investigative intrusion; a mere hunch is insufficient. *City of Lake Forest v. Dugan*, 206 Ill. App. 3d 552, 555 (1990). An observation of erratic driving is sufficient to justify a traffic stop. *People v. Diaz*, 247 Ill. App. 3d 625, 627 (1993). While reasonable grounds for an investigative stop may be based on an informant's tip, some indicia of reliability must be present to justify a stop. *Diaz*, 247 Ill. App. 3d at 627; *Dugan*, 206 Ill. App. 3d at 555; *Village of Gurnee v. Gross*, 174 Ill. App. 3d 66, 69-70 (1988). However, the officer's own observations may corroborate the tip or may provide an independent basis for the stop. *Diaz*, 247 Ill. App. 3d at 627.

■ A summary suspension rescission hearing is a civil proceeding in which the motorist bears the burden of proof to establish a *prima facie* case for rescission. *People v. Orth*, 124 Ill. 2d 326, 337-38 (1988). The trial court's determination in a rescission proceeding will be overturned only if the finding is against the manifest weight of the evidence. *Orth*, 124 Ill. 2d at 341. Furthermore, a trial court's determination regarding a motion to suppress will not be overturned unless it is determined to be manifestly erroneous. *Faletti*, 215 Ill. App. 3d at 64. This court will not disturb the trial court's determinations regarding the credibility of the witnesses or the weight to be given their testimony. *People v. Strickland*, 154 Ill. 2d 489, 521 (1992).

■ The present issue is controlled by *Gross*. There, the arresting

officer received a radio dispatch stating that there had been a reckless driving complaint involving a blue Camaro. The complainant also gave the license plate number of the vehicle and the block where the reckless driving occurred. *Gross*, 174 Ill. App. 3d at 67. The court held that the officer's observation of the defendant's car, which matched the description, license plate number, and general location of the car in corroboration of the complaint, coupled with the defendant's lack of response to the officer's request to pull his car over, were sufficient to permit an investigatory stop. *Gross*, 174 Ill. App. 3d at 70. Similarly, in the instant case, Officer Dowdle observed the defendant's car, which matched the description, partial license number, and general location of the car in corroboration of the complaint. While this, standing alone, would be insufficient corroboration, we find that it was sufficient when coupled with the defendant's failure to pull to the right after Officer Dowdle activated his lights and siren. The defendant claimed that he did not notice the officer's lights and siren until after he had traveled 600 feet. However, the defendant's conduct in not noticing a squad car with flashing lights and siren would support the inference that he was driving under the influence of alcohol.

The defendant claims that he was "stopped" the moment the officer activated his lights. However, we disagree with that conclusion. In order to determine whether a particular encounter constitutes a seizure or a stop for fourth amendment purposes, a court must consider all the surrounding circumstances of the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 439, 115 L. Ed. 2d 389, 402, 111 S. Ct. 2382, 2389 (1991). Moreover, not every instance of a police "show of authority" constitutes a seizure. *California v. Hodari D.*, 499 U.S. 621, 626, 113 L. Ed. 2d 690, 697, 111 S. Ct. 1547, 1550 (1991). A seizure requires physical force or, where that is absent, submission to the assertion of authority. *Hodari D.*, 499 U.S. at 626, 113 L. Ed. 2d at 697, 111 S. Ct. at 1551. In other words, absent physical force, a police show of authority in activating lights and siren does not amount to a stop until the defendant submits to the show of authority. In the present case, a stop could not have occurred until the defendant actually submitted to the police show of authority by pulling over and stopping his vehicle. Thus, a "stop" did not occur until the defendant actually submitted to the police officer's authority by stopping in the Jewel parking lot.

Additionally, we note that when a squad car activates its lights

and siren, a motorist is required by statute to yield the right-of-way and pull to the right-hand edge of the road. 625 ILCS 5/11—907 (West 1996). This does not amount to a "stop" under the fourth amendment. We hold that it is only when it becomes clear to a reasonable person that the officer's efforts are directed at that particular motorist to pull over that a stop can occur within the meaning of *Bostick*. Under the circumstances, we find that the trial court's decisions to deny the defendant's motion to suppress and his petition to rescind the statutory summary suspension of his license were not against the manifest weight of the evidence.

The defendant next argues that the trial court erred in refusing to declare a mistrial when the arresting officer testified that "[the defendant] told me he had been through this before." The defendant contends that this testimony was a violation of the trial court's order granting the defendant's motion *in limine*, which precluded the State from introducing any evidence of the defendant's prior DUI offenses.

It is well settled that evidence of other crimes is not admissible to show propensity to commit crimes. *People v. Carroll*, 257 Ill. App. 3d 663, 667 (1993). However, such evidence is admissible for any other relevant purpose such as to show the circumstances of the arrest. *People v. McKibbins*, 96 Ill. 2d 176, 182-83 (1983). Moreover, the erroneous introduction of evidence of a defendant's prior criminal conduct does not, *per se*, require reversal. *People v. Bailey*, 88 Ill. App. 3d 416, 422 (1980). Such evidence is deemed harmless where the evidence of the defendant's guilt is overwhelming. *Bailey*, 88 Ill. App. 3d at 422. The decision of whether to grant a mistrial is within the sound discretion of the trial court, and its decision will not be reversed absent a showing that the defendant suffered prejudice. *People v. McKinney*, 193 Ill. App. 3d 1012, 1017 (1990).

Here, the complained-of statement was made in response to a question calling for an explanation of the defendant's refusal to take a chemical breath test. The trial judge sustained defense counsel's objection to the comment and admonished the jury to disregard it. Assuming *arguendo* that the statement was erroneous, we find that the defendant did not suffer any prejudice as a result of the comment. Furthermore, the comment was harmless in view of the overwhelming evidence of the defendant's guilt. In that regard, we note that the defendant traveled approximately 1,000 feet before he stopped while being followed by the officer. When he exited the vehicle, he nearly fell and had to use his vehicle for support. He then proceeded to fail three field sobriety tests. The arresting officer noted that the defendant had a strong odor of alcohol and his eyes were red and glassy. Additionally, the defendant admitted that he had been

drinking alcohol on the night in question. Under these facts, we find that the trial court did not err in refusing to grant a mistrial.

■ Lastly, the defendant contends that the State failed to prove him guilty beyond a reasonable doubt.

Upon judicial review, the relevant question is whether, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A reviewing court should not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Stremmel*, 258 Ill. App. 3d 93, 107 (1994).

Here, we find that a rational trier of fact could have found the defendant guilty of DUI beyond a reasonable doubt. As we previously stated, Officer Dowdle's observation of the defendant's conduct upon exiting his vehicle and the defendant's failure of three field sobriety tests supported the jury's finding that the defendant was guilty beyond a reasonable doubt of DUI.

For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

HUTCHINSON, J., concurs.

JUSTICE COLWELL, dissenting:

I respectfully dissent. After considering the totality of the circumstances, I believe Officer Dowdle lacked sufficient facts, at the time of the stop, to justify an investigatory stop. Thus, the trial court's denial of the motion to suppress was manifestly erroneous, and I would reverse and remand for a new hearing on defendant's petition to rescind the statutory summary suspension.

My inquiry begins with a determination as to when Officer Dowdle stopped defendant. Without a stop, there is no seizure, and absent a seizure, the fourth amendment is not implicated. *People v. Taggart*, 233 Ill. App. 3d 530, 547 (1992). A seizure occurs when a police officer, by means of physical force or a show of authority, has in some way restrained the liberty of a citizen. *United States v. Mendenhall*, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980) (opinion of Stewart and Rehnquist, JJ.). The test for determining when a police officer has seized a citizen is whether, in view of all the surrounding circumstances, a reasonable person would have believed he or she was not free to leave. *Florida v. Royer*, 460 U.S. 491, 501-02, 75 L. Ed. 2d 229, 239, 103 S. Ct. 1319, 1326 (1983).

In *City of Highland Park v. Lee*, 291 Ill. App. 3d 48, 54 (1997), this court found that a police officer's use of emergency lights constituted a show of authority used to restrain a citizen's liberty, and, thus, the traffic stop was a seizure. See *Michigan v. Chesternut*, 486 U.S. 567, 572-75, 100 L. Ed. 2d 565, 571-73, 108 S. Ct. 1975, 1978-80 (1988) (suggesting that activation of siren or flashing lights might constitute a seizure); 4 W. LaFave, Search & Seizure § 9.3(a), at 97 n.45, 109 n.100 (3d ed. 1996 & Supp. 1998) (cases cited therein). In contrast, in *People v. Long*, 99 Ill. 2d 219, 231 (1983), our supreme court found that no stop occurred when a police officer, in his squad car, followed the defendant's truck for about a quarter of a mile before the defendant voluntarily pulled over, since the officer never activated his squad car's light or siren. See also *People v. Erby*, 213 Ill. App. 3d 657, 662 (1991) (no stop occurred when a police officer shined a light into a parked car where the officer did not use his flashing police lights as a show of authority); *People v. Graves*, 196 Ill. App. 3d 273, 277 (1990) (no stop occurred when a police officer drove up to the side of the defendant's parked car, "particularly where there is no evidence that the officer activated any emergency lights or displayed any other overt signs of authority"); *Taggart*, 233 Ill. App. 3d at 547 (where the officer did not activate his mars light or any other signal lights, no stop occurred until the police officer asked the defendant to remain near his squad car). Accordingly, I find that a stop occurred when Officer Dowdle activated his squad car's lights and siren.

The majority relies on *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991), but the facts in that case are distinguishable. In *Hodari*, the defendant ran down an alley when he noticed a police officer's unmarked car round a corner. An officer, on foot, chased and caught the defendant. That case did not involve the activation of a police light or siren, nor did it involve the stop of a vehicle in traffic. Thus, *Hodari* provides no support for the majority's position.

The next question is whether the stop was reasonable. The majority admits that, without the fact that defendant continued to travel after Officer Dowdle activated his car's lights and siren, Officer Dowdle's observations provided insufficient corroboration of the anonymous informant's tip. The court in *People v. Messamore*, 245 Ill. App. 3d 627 (1993), however, rejected the consideration of any facts occurring after the officer activated his squad car's lights. In *Messamore*, after receiving an anonymous informant's call, the police followed a vehicle for four to six blocks without incident before activating their squad car's lights. The defendant drove about one-eighth to one-fourth of a mile before stopping in a parking lot. *Messamore*, 245 Ill. App. 3d at 628-29.

The State argued that the stop was justified because the defendant continued to drive after the police activated their lights. *Messamore*, 245 Ill. App. 3d at 630. The court, however, stated that the requirements for a stop must be met prior to the stop. "To hold otherwise would allow police officers to justify a stop using events occurring after their reasonable suspicion was supposed to have been formed to support their actions." *Messamore*, 245 Ill. App. 3d at 630. I also refuse to consider any facts occurring after Officer Dowdle activated his lights and siren.

Additionally, when considering the totality of the circumstances, the facts do not support a stop. For example, the anonymous informant did not identify the location on Route 83 where he observed the brown Cadillac heading south from the Lake Villa area. The suspect may have been too far north on Route 83 to travel south and reach the intersection with Rollins Road in the two minutes it took Officer Dowdle to locate defendant after receiving the radio dispatch.

Similarly, the informant indicated that the suspect was traveling south on Route 83, but Officer Dowdle first observed defendant in the eastbound lane of Rollins Road waiting for the traffic light at the intersection with Route 83. Thus, in two minutes, defendant would have had to travel south from an unidentified location on Route 83, turn right on Rollins Road, and turn around across two lanes of westbound traffic to reach the location where Officer Dowdle first observed him.

In addition, defendant denied being on Route 83 that evening, and his testimony was uncontradicted. Moreover, defendant's explanation regarding his presence at the intersection was plausible. Defendant testified that, since his wife was going to be home late, he was traveling from his house to a Mexican take-out restaurant in Rollins Plaza, east of the intersection of Route 83 and Rollins Road. Defendant explained that he lived seven houses north of Rollins Road and west of the intersection. Thus, he turned left on Rollins Road and was eastbound when he was pulled over. Office Dowdle also testified that defendant was ultimately traveling to a Mexican restaurant.

Moreover, Officer Dowdle followed defendant for 400 to 500 feet before activating his car's lights and siren. Officer Dowdle, however, admitted that he did not observe any erratic driving.

Furthermore, Officer Dowdle testified that, to the best of his recollection, the anonymous informant provided a partial license plate number. Officer Dowdle's report, however, did not include the partial license plate number.

In addition to these factual weaknesses, the majority's reliance on *Village of Gurnee v. Gross*, 174 Ill. App. 3d 66 (1988), is misplaced.

In *Gross*, unlike this case, the radio dispatch identified the exact location (4200 block of Blackstone) where the reckless driving complaint originated and included an entire license plate number. Furthermore, the officer in *Gross*, with his lights activated, clearly instructed the defendant to pull over, but the defendant continued driving before pulling over after the officer had turned around and followed him.

The facts in this case are also in contrast with the facts in *People v. Diaz*, 247 Ill. App. 3d 625 (1993). In *Diaz*, the informant's tip contained information similar to the information provided the police in this matter, but the *Diaz* court relied solely on the officer's own observations of the defendant's erratic driving to justify the stop. *Diaz*, 247 Ill. App. 3d at 627. In this case, Officer Dowdle did not observe any erratic driving.

On the other hand, the facts in this case are similar to the facts in *City of Lake Forest v. Dugan*, 206 Ill. App. 3d 552 (1990). In *Dugan*, this court affirmed the trial court's order granting the defendant's motion to suppress. The informant in *Dugan* provided the police with a more detailed tip than the tip in this case, but, like this case, there was no evidence the officer observed any bad driving. *Dugan*, 206 Ill. App. 3d at 555.